RAINES

1350 Avenue of the Americas, 22nd Fl
New York, New York 10019
Main: 917.790.7100

www.raineslaw.com
smiller@raineslaw.com

August 31, 2026

**BY ECF**

Honorable Robert Kirsch
United States District Court Judge
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: **Princeton Logistics Group, LLC v. Patrick Louis Group, Inc., Civil Action No. 3:26-cv-06559-RK-JTQ – Request for Pre-Motion Conference Regarding Defendant's Anticipated Motion to Dismiss**

Dear Judge Kirsch:

Pursuant to Section I(A)(1) of the Court's Individual Rules and Procedures, Defendant Patrick Louis Group, Inc. respectfully requests a pre-motion conference in anticipation of its motion to dismiss (i) Count V (Declaratory Judgment) for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and (ii) Counts I-IV for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**I. Count V Should Be Dismissed for Lack of Subject-Matter Jurisdiction.**

Plaintiff Princeton Logistics Group, LLC ("Plaintiff" or "Princeton") invokes diversity jurisdiction, but alleges only its state of organization and principal place of business. (Compl. ¶¶ 7-8.) That is the wrong test for an LLC: an LLC's citizenship is determined solely "by the citizenship of its members," without regard to state of organization or principal place of business. Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) ("the citizenship of an LLC is determined by the citizenship of its members."). The Complaint never alleges the citizenship of Plaintiff's members, and Plaintiff—as the party invoking the Court's jurisdiction—bears that burden. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (holding burden of establishing federal jurisdiction lies with party invoking court's jurisdiction).

Supplemental jurisdiction supplies no alternative basis. Count V—a freestanding dispute over unpaid freight invoices, (Compl. ¶¶ 34-35, 86-90), shares no "common nucleus of operative fact" with Plaintiff's trademark claims, which turn on use of a common designation and likelihood of confusion. Lyons v. Whisman, 45 F.3d 758, 759 (3d Cir. 1995) (dismissing state law claim because no "common nucleus of operative fact"). Tellingly, Plaintiff's own supplemental jurisdiction paragraph does not even purport to reach Count V. (Compl. ¶ 3.) In the alternative, the Court

should decline discretionary jurisdiction over Count V under the Declaratory Judgment Act, 28 U.S.C. § 2201, given the independent forum available for that dispute. Wilton v. Seven Falls Co., 515 U.S. 277, 286-88 (1995) (internal citation omitted) ("On its face, the statute provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration.'") (emphasis added); State Auto Ins. Co. v. Summy, 234 F.3d 131, 133-34 (3d Cir. 2000) ("the jurisdiction conferred by the Act was discretionary, and district courts were under no compulsion to exercise it.").

Indeed, while Count V appears as an ancillary matter unrelated to the counts asserted under Federal law, in fact, this entire action is actually Plaintiff's attempt to avoid paying Defendant what Plaintiff owes it for freight services.

**II. Count IV Fails to State a Claim for Tortious Interference.**

Count IV does not identify any specific customer, carrier, broker, or contract actually diverted from Plaintiff to Defendant, nor any specific relationship disrupted; Plaintiff instead offers only a generic assertion that Defendant "direct[ed] business to itself." (Compl. ¶ 81.) A tortious interference claim requires particularized allegations of a lost relationship, not conclusory recitations of the elements. Austar International Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 359 (D.N.J. 2019) (citing Advanced Oral Techs., LLC v. Nutrex Research, Inc., No. 10-5303, 2011 WL 1080204, at *4 (D.N.J. Mar. 21, 2011) ("[A] plaintiff must do more than assert that it lost business. Rather it 'must allege facts that show an existing or prospective economic or contractual relationship' for a 'mere allegation of lost business does not suffice.'"); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

The claim also merely repackages the same conduct alleged in Counts I-III without any independent wrongful act, which is insufficient given New Jersey's protection of ordinary competition. Zahler v. Jackson Lewis P.C., 2026 WL 391921, Civil No. 5:25-cv-04215-JMG, at *5 (E.D. Pa. 2026) (holding plaintiff failed to state a claim for tortious interference by not identifying identify specific business relationships or prospective contractual opportunities, or explaining how defendants' conduct intentionally or improperly interfered with them). Interference is "without justification" only where the defendant's conduct was both intentional and independently wrongful. Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 215 (3d Cir. 2009) ("for conduct to be wrongful it must be actionable for a reason independent from the claim of tortious interference itself"). Competing for the same customers is privileged and does not, by itself, satisfy this element. Id. ("competitors, in certain circumstances, are privileged in course of competition to interfere with others' prospective contractual relationships."). Indeed, the existence of an active, unrelated third-party registration for the identical mark, discussed below, further confirms that Defendant's use of "PLG" does not constitute the kind of independently wrongful conduct "without justification" that tortious interference requires.

**III. Count I-III Rests on Conclusory Second-Meaning Allegations.**

Counts I-III all require a valid, protectable mark distinctive of Plaintiff specifically. "PLG" is a bare initialism of Plaintiff's own name—at most descriptive, and protectable only upon acquired secondary meaning, which Plaintiff concedes it must establish. (Compl. ¶ 42.) Plaintiff's allegations of "substantial market recognition" and unspecified advertising spend, (Compl. ¶¶ 43, 61), are generic and formulaic, and do not plausibly show that the relevant public associates "PLG" with Plaintiff rather than any other user of the same three letters. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding generic and formulaic recitation of the elements is insufficient). Plaintiff's own allegations further undercut consistent, source-identifying use: the Company alleges Plaintiff used "PLG" interchangeably across at least three separate corporate entities—PLG Corp., Princeton Logistics Group, LLC, and PLG Middle Mile Transport LLC. (Compl. ¶ 59.) Nowhere does the Complaint explain the corporate relationship among the three entities (e.g., whether one is a parent, subsidiary, or successor of another), nor does it allege that any resulting goodwill in the "PLG" designation was properly maintained or transferred among them. Use of the same initialism across multiple, seemingly independent corporate entities—without any pled basis for treating their use as unitary—undermines any inference that the relevant purchasing public has come to associate "PLG" specifically and consistently with a single source, as secondary meaning requires, and instead suggests the kind of fragmented, entity-specific use that defeats a claim to a single continuous mark. Valley Forge Military Academy Foundation v. Valley Forge Old Guard, Inc., 24 F. Supp. 3d 451, 457 (E.D. Pa. 2014) (identifying exclusivity of use as one factor relevant to whether secondary meaning has been acquired).

Independently, Plaintiff's claim to exclusive rights in "PLG" is undermined by a currently active third-party federal registration for the identical mark. Professional Logistics Group, Inc. holds U.S. Registration No. 4190306 for the standard-character mark "PLG," registered August 14, 2012 and renewed in 2022, covering business consulting services relating to logistics, transportation, supply chain, operations management, and distribution solutions, with a first-use-in-commerce date of August 2006. The Court may take judicial notice of the existence and contents of this federal registration, a public record maintained by the USPTO, without converting this motion into one for summary judgment. Southmark Prime Plus, L.P. v. Falzone, 776 F. Supp. 888, 892 (1991) ("[T]he consideration of the judicially noticed facts does not convert the motion into a Rule 56 motion for summary judgment."); Fed. R. Evid. 201(b). An active, coextensive third-party registration of the identical mark in a closely related field further undercuts any claim that "PLG" is distinctive of Plaintiff specifically or that Plaintiff holds the kind of exclusive rights necessary to sustain Counts I through III.

For these reasons, Defendant respectfully requests a pre-motion conference and leave to file its motion to dismiss. Counsel for Defendant is available at the Court's convenience and will confer with Plaintiff's counsel as required by Section I(A)(2) of the Court's procedures.

Respectfully submitted,

Simon Miller, SBN 051541993
RAINES FELDMAN LITTRELL, LLP
1350 Avenue of the Americas, 22nd Floor
New York, New York 10019
917-790-7105
smiller@raineslaw.com

Christopher Frost (*pro hac vice application forthcoming*)
Catherine Liu (*pro hac vice application forthcoming*)
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
424-254-0441
chris@frostllp.com
catherine@frostllp.com

*Attorneys for Defendant Patrick Louis Group Incorporated*

Cc: Counsel of Record (via ECF)